# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACEY M. HRONICH,                :        CIVIL NO: 3:10-CV-02442
                                  :
          Plaintiff,              :
                                  :        (Judge Nealon)
                v.                :
                                  :        (Magistrate Judge Carlson)
MICHAEL J. ASTRUE,                :
COMMISSIONER OF THE               :
SOCIAL SECURITY                   :
ADMINISTRATION,                   :
                                  :
          Defendant.              :

## REPORT AND RECOMMENDATION

## I.      Statement of Facts and of the Case

### A.      Introduction

This social security appeal, in part, presents a simple question: When a social security claimant states that she is capable of working while applying for unemployment benefits, may an administrative law judge properly consider and rely upon that admission in concluding that the claimant is not wholly disabled but may perform limited sedentary work? Because we find that an ALJ may rely on these admissions, and further find that substantial evidence supports the ALJ's finding in this case that the Plaintiff is not wholly disabled, we recommend that this appeal be denied.

The Plaintiff, Stacy M. Hronich, appeals from an adverse social security disability decision which denied her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").   The Plaintiff alleged that she was disabled and unable to perform substantial gainful employment as a result of severe multiple physical and mental impairments including scoliosis, anxiety, and depression.

The ALJ found that the Plaintiff was not disabled because she has the capacity to perform a limited range of sedentary work and significant positions exist in the economy that the Plaintiff can perform.   The Plaintiff now argues that the ALJ erred in failing to classify the Plaintiff's degenerative disc disease as a severe impairment, that the ALJ erred in assessing the opinions of the Plaintiff's treating physicians and that the ALJ erred in evaluating the Plaintiff's residual functional capacity. The Plaintiff also argues that the ALJ erred in considering that she received unemployment compensation during the relevant time period, and as part of this process certified that she was ready, willing and able to work.

We find that substantial evidence supports the ALJ's conclusion that the Plaintiff is not disabled and thus we recommend that the Plaintiff's appeal be denied.

### B.    **Hronich's Medical and Employment History**

In this case, the evidence developed in these disability proceedings presented

conflicting and contradictory accounts by Hronich regarding her abilities and limitations. That evidence reveals that the Plaintiff, Stacy M. Hronich, was born on March 1, 1982, and was twenty-five years old on the alleged disability onset date. (TR. 23).   Hronich is therefore considered a younger individual under the Regulations.   20 C.F.R. §§ 404.1563(c) and 416.963(c).   Hronich is able to communicate in English and has a high school education.  (TR. 24).   During the relevant period, the Plaintiff resided in several different places on her own, with her grandparents, and with her boyfriend.  (TR. 50, 340, 348).   Her activities included watching television, reading, using the internet, and riding a bicycle. (TR. 163).  The Plaintiff had a car and was able to drive.  (TR. 163).

The Plaintiff had past relevant work experience as a telemarketer, a collections clerk, and an accounts receivable clerk.  (TR. 23; Doc. 5 at 4).  She testified that her disabilities prevented her from continuing to perform in these positions.  (TR. 48-49). She stated that she "wouldn't be able to function in a normal office environment" and that she would not be able to contact people and ask them for money or concentrate on paperwork.  (TR. 57).  The Plaintiff testified that though she worked in accounts receivable for approximately seven years, her physical and mental impairments caused her to be frequently absent from work.  (TR. 59).  The Plaintiff also testified that she had a nervous breakdown because she felt overwhelmed at her telemarketing

-3-

position and was hospitalized for a suicide attempt.  (TR. 60).

While making these claims before the ALJ Hronich provided a markedly different description of her abilities when she applied for unemployment benefits. At that time, Hronich certified that she was ready, willing, and able to work and was currently looking for work. (TR. 23).  The ALJ later observed in this regard: "The [Plaintiff] cannot be ready, willing, and able to work for purposes of the State, but disabled and unable to work for purposes of the Social Security Administration. She cannot have it both ways."

The Plaintiff further alleged multiple physical and mental impairments, including degenerative disc disease in the lumbar and cervical spine, scoliosis, anxiety and depression.  When asked what gave her the most difficulty and prevented her from working, the Plaintiff stated,

> Mainly, it's the psychiatric problems, the pretty much debilitating, severe anxiety, and depression, and then, also contributing to it is my physical symptoms, mainly marked by my scoliosis, the curvature of my spine, degenerative discs, neck problems, spasms, things of that nature. Primarily, it's, you know, the crippling anxiety. I get in a racing thoughts, total lack of motivation, and I've increasingly had, you know, thoughts of suicide more recently, like fleeting thoughts of suicide.

(TR. 49).

Like Hronich's own statements, the medical records presented a mixed, and occasionally contradictory picture, but documented a significant residual capacity for

-4-

work by Hronich. Prior to the onset date of her alleged mental impairments, in July of 2007 the Plaintiff was hospitalized after she took six mg of Xanax pills when her boyfriend moved out of their apartment.  (TR. 163, 202).  She was hospitalized, treated, and cleared to return to work as of August 2, 2007.  (TR. 154).  Upon information and belief, the Plaintiff stated that prior to that incident, she had not been treated by a psychiatrist.  (TR. 202).

In August of 2007, the Plaintiff was evaluated by Jamie L. Durchin, PA-C and her primary care physician, Matthew Berger, M.D. ("Dr. Berger"), who diagnosed the Plaintiff with Major Depressive Disorder and recurrent Generalized Anxiety Disorder. (TR. 198-210; 339-359).  Dr. Berger observed that the Plaintiff had symptoms of anxiety and depression, that she had poor memory and concentration, and that she was easily overwhelmed.  (TR. 200).  Dr. Berger reported that the Plaintiff suffered from social anxiety and has feelings of worthlessness and helplessness.  (TR. 200, 202). In September of 2007, the Plaintiff reported many of the same symptoms, but denied having suicidal tendencies.  (TR. 206).  One month later, she reported that she moved in with her grandparents and had a slight improvement in her mood but still had episodes of panic.  (TR. 208).  Dr. Berger increased the dosage of her Cymbalta to improve her anxiety and depression and increase her daily functioning.  (TR. 209).

In November of 2007, Dr. Berger completed a mental residual functional capacity ("RFC") assessment. He indicated that the Plaintiff had marked or severe limitations in various areas, including her ability to concentrate, socially interact with the general public, and respond to changes in a work setting. (TR. 211-213).

In January of 2008, the Plaintiff reported that she had moved out of her grandparents' home and into her own apartment.  (TR. 348).  She alleged that her grandmother had issues with alcoholism and that she was physically and verbally abusive to the Plaintiff.  (TR. 348).   Dr. Berger again increased the dosage of the Plaintiff's medication, Cymbalta. (TR. 349).

In February of 2008, the Plaintiff reported that she was recently hospitalized with mononucleosis and chronic fatigue.  (TR. 345).  She stated that she was not able to get out of bed and was having problems with her family. (TR. 345).

In April of 2008, the Plaintiff indicated that she was struggling and could be feeling better. (TR. 340).  She stated that she was prescribed morphine and having a problem with it and that she was drinking more.  (TR. 340).  She denied any suicidal thoughts, but stated she felt worse since her last visit.  (TR. 340).  The Plaintiff indicated that she was living alone.  (TR. 340).

 To manage her anxiety and depression, the Plaintiff also attended weekly counseling sessions with Jacqueline Costello, LPC at Lighthouse Counseling.  (TR.

387-390).   She currently takes multiple medications to treat the symptoms of her mental impairments, including Cymbalta, Trazadone, Xanax, Methodone and Soma. (Doc. 5 at 6; TR. 50).

The Plaintiff also sought treatment for her physical ailments which include scoliosis and alleged spinal problems.  In June of 2006, prior to her alleged onset date, a spinal MRI revealed that the Plaintiff had thoracic scoliosis, but did not reveal degenerative disc disease. (TR. 138-139).  The Plaintiff's orthopedist, Alan Gillick, M.D. ("Dr. Gillick"), recommended that the Plaintiff take Aleve for pain due to her "mild" scoliosis. (TR. 141).  When another MRI showed that the Plaintiff had "mild" scoliosis in April of 2007, Dr. Gillick recommended that the Plaintiff seek physical therapy for flexibility and strength training.  (TR. 144).

In January of 2008, the Plaintiff had another thoracic MRI which revealed scoliosis but no other abnormalities.  (TR. 386).

The Plaintiff sought treatment from Debra Mistal, D.O. in January of 2008. (TR. 360-386; 398-406).  Dr. Mistal prescribed methadone for the Plaintiff's pain and referred her for pain management.  (TR. 367, 371, 373, 377-378).  Despite these physical impediments, Dr. Mistal also reported that the Plaintiff was capable of lifting and carrying up to 15 pounds, standing or walking for three hours, and sitting for 30 minutes without interruption and for four hours total in an eight hour day. (TR. 395).

The Plaintiff evaluated by state agency psychologist John Gruthowski, Ph.D., who reviewed the Plaintiff's record in January of 2008 and opined that the Plaintiff was not significantly limited in her ability to understand, remember and carry out simple instructions. (TR. 211-212). Dr. Gruthowski also found that the Plaintiff was not mentally competent to perform competitive work on a sustained basis. (TR. 213).

The Plaintiff was also evaluated by state agency reviewing physician Sharon A. Wander, M.D. in February of 2008. (TR. 271-276). Dr. Wander concluded that the Plaintiff could perform a limited range of medium work, and noted that the treatment notes in her record did not document any significant limitations. (TR. 271-276).

## C.    Procedural History

The allegations in the Plaintiff's Complaint stem from the Agency's denial of DIB and SSI benefits. On September 21, 2007, the Plaintiff filed an application for DIB pursuant to Title II and SSI pursuant to Title XVI. (TR. 17; 94-100; 101-104). This application was initially denied by the agency on February 21, 2008. (TR. 72-76; 77-81).

The Plaintiff filed a written request for a hearing on April 10, 2008. (TR. 82-83). On August 21, 2009, a hearing was held and the Plaintiff appeared and testified

before an ALJ in Wilkes Barre, Pennsylvania.  (TR. 44-68).  Vocational expert Patricia L. Chilleri also appeared at the hearing.  (TR. 62-67).

On September 14, 2009, the ALJ issued an Order denying benefits to the Plaintiff.  (TR. 14-25).On November 13, 2009, the Plaintiff appealed the ALJ's decision to the Appeals Council.  (TR. 4-13).  On September 24, 2010, the Appeals Council denied the Plaintiff's appeal.  (TR. 1-3).

The Plaintiff then filed a Complaint with this court on November 24, 2010. (Doc. 1).  The parties have briefed their respective positions in this matter. (Docs. 3 and 6). Accordingly, this case is now ripe for resolution. For the reasons set forth below, we recommend that the Plaintiff's appeal from the decision of the Commissioner of Social Security, which denied her request for DIB and SSI benefits, be DENIED.

## II.    Discussion

### A.    Standards of Review–The Roles of the Administrative Law Judge and This Court

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for

entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits.  See 20 C.F.R. § 404.1520. See also Plummer  v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that

a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. § 404.1520.

As part of this analysis the ALJ must sequentially determine, first, whether the claimant is engaged in substantial gainful activity. If a claimant is not engaged in gainful activity, the ALJ must then determine at step two whether the claimant has a severe impairment. If a claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.  See Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  The Regulations provide that a "severe" impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520.  With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight  abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96-3p, 85-28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec*.,* 370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec*.,* 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' Id." Velazquez

v. Astrue, No. 07-5343, 2008 WL 4589831, *2 (E.D. Pa. Oct. 15 2008).

Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir. 2004).

Once this threshold, *de minimus* showing is made, the ALJ must consider the following three factors: (1) whether the claimant's impairment meets or equals a listed impairment; (2) whether the claimant's impairment prevents the claimant from doing past relevant work; and (3) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520. This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

Moreover, where a disability determination turns on an assessment of the extent of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work."

Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require[ ]" the ALJ "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id.

In making this assessment, the ALJ is guided both by statute and by regulations. This guidance eschews wholly subjective assessments of a claimant's pain. Instead, at the outset, by statute the ALJ is admonished that an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence. . . , would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. Under these regulations, first, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform

-13-

work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. § 404.1529(b).  Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b).  In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating  the credibility of the claimant's statements regarding her symptoms: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and

laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)."  SSR 96-4p.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social

Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)." Johnson, 529 F.3d at 200. See also  Pierce v. Underwood, 487 U.S. 552 (1988).  It is less than a preponderance of the evidence but more than a mere scintilla of proof.  Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason

v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence."  Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).  Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000).  Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**B.      Substantial Evidence Supports the ALJ's Opinion**

> **1.      The ALJ properly evaluated the Plaintiff's physical impairments at step two of the evaluation process.**

The Plaintiff first argues that the ALJ erred in determining that only scoliosis, anxiety and depression were severe impairments at step two of the sequential evaluation process. (Doc. 5 at 6-9).  The Plaintiff asserts that the ALJ should have found that the Plaintiff's remaining spinal impairments were also severe. (Doc. 5 at 9).

At step two, the ALJ must determine whether a claimant who is not currently performing substantial gainful work is suffering from a severe impairment. If a claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.  See Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  The Regulations provide that a "severe" impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §404.1520.  The step two inquiry is a *de minimis* screening device and if the evidence presents more than a slight abnormality, the step two requirement of severity is met and the sequential process should continue.  Newell, 347 F.3d at 546.

In Velazquez v. Astrue, 2008 WL 4589831 (E.D. Pa. 2008), the Court stated:

> In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96-3p, 85-28. The Third Circuit Court of Appeals has held that

> the step two severity inquiry is a *"de minimus* screening device to dispose of groundless claims." McCrea v. Comm. of Soc. Sec*.,* 370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec*.,* 347 F.3d 541, 546 (3d Cir.2003). "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." Id*.*

Id. at *2.

According to the Social Security Regulations, an impairment is not severe if it does not significantly limit the Plaintiff's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a). Basic work activities include physical functions such as: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(1) - (6).

The Plaintiff argues that the ALJ improperly excluded the Plaintiff's additional impairments with respect to her cervical and lumbar spine. (Doc. 5). The Defendant argues that the ALJ did not deny the Plaintiff's claim at step two so that it was not necessary for the ALJ to have found that any additional alleged impairments be severe. (Doc. 6 at 10). Moreover, the Defendant asserts that the ALJ accounted for all of the Plaintiff's credibly established limitations in the RFC assessment. (Doc. 6 at 10).

We agree with the Defendant and find that substantial evidence supports the

ALJ's assessment of both the Plaintiff's mental and physical impairments at step two

of the sequential evaluation process. The Plaintiff states,

> The [ALJ] only found that scoliosis but only the scoliosis was a severe
> impairment. The [ALJ] did not feel that the additional spinal problems
> were severe enough insofar as they cause a limitation of the Plaintiff's
> ability to perform some work related activities. However, we
> respectfully point out that Dr. Mistal, the attending physician, found the
> ability to perform limited sedentary work as a result of those additional
> spinal problems.

(Doc. 5 at 8).

This argument is meritless because the ALJ clearly considered Dr. Mistal's

opinion that the Plaintiff was able to perform sedentary activities and thus, limited the

Plaintiff to a limited range of sedentary work. (TR. 22-23). The ALJ cited Dr. Mistal

as opining that the Plaintiff could perform sedentary activities but her ability to sustain

work was questionable. (TR. 23). The ALJ stated, "in terms of the [Plaintiff's]

alleged spinal problems, she has 20 degree dextroscoliosis of the thoracic spine but

without any underlying vertebral abnormalities, disc herniations, or stenosis." (TR. 22;

360-386). The ALJ noted that the Plaintiff had this condition for a long time and was

able to work with it in the past. (TR. 22). The ALJ noted that though the state agency

reviewing physician, Dr. Wander, said the Plaintiff could do medium work, he

believed that would be "too much" for the Plaintiff. (TR. 22). The ALJ included the

following restrictions to account for the Plaintiff's physical impairments: lifting and

carrying 10 pounds occasionally and two to three pounds frequently; standing for 30 minutes at a time; alternating from sitting to standing position every 30 minutes; standing or walking for up to 15 minutes at a time, but no more than two to three hours cumulatively in an eight hour workday. (TR. 21). Thus, because the ALJ included all of the Plaintiff's physical limitations in the RFC assessment, it is irrelevant whether or not the ALJ found the Plaintiff's remaining spinal problems were severe at step two of the sequential evaluation process. The record shows that the ALJ included the limitations resulting from the Plaintiff's physical impairments in the RFC assessment. (TR. 21-23). See Rutherford v. Barnhart, 399 F.3d 546 (3d Cir. 2005)(stating that even though the ALJ did not explicitly consider the claimant's obesity as an impairment, it was factored indirectly into the decision as part of the physician opinions; thus, a remand was unnecessary because it would not affect the outcome of the case).

Further, the Plaintiff does not specify what additional limitations the ALJ should have included as a result of the Plaintiff's alleged remaining physical impairments and the Plaintiff has not shown that any remaining spinal problems had more than a minimal effect on her ability to perform her basic work activities. Moreover, there is no evidence that the Plaintiff had any severe spinal problems other than scoliosis. The Plaintiff's medical records are replete with statements that there

was no degenerative disc disease or any remarkable abnormalities, other than scoliosis. (TR. 138-139; 140-144; 386).

Finally, the Plaintiff's argument ignores the fact that the ALJ's ultimate, overall determination at stage 2 of these proceedings was that Hronich suffered from severe impairments. Thus, the ALJ's conclusion at this stage of the disability assessment process was, in fact, favorable to Hronich.

Thus, the ALJ properly evaluated the Plaintiff's impairments at step two of the sequential evaluation process and substantial evidence supports his opinion.

### 2.    The ALJ properly evaluated the opinions of the Plaintiff's treating physicians.

Next, the Plaintiff argues that the ALJ improperly discounted the opinions of the Plaintiff's treating physicians Dr. Mistal and Dr. Berger.  (Doc. 5 at 9-11). Specifically, the Plaintiff argues that the ALJ wrongfully excluded Dr. Mistal's opinion in determining the Plaintiff's residual functional capacity. (Id.) The Plaintiff also argues that the ALJ wrongfully discounted Dr. Berger's opinion with respect to the Plaintiff's psychological component and disabilities.  (Id.)

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of Morales v. Apfel, 225 F.3d 310  (3d Cir. 2000).  The Court stated:

A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir.1994); Jones, 954 F.2d at 128; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See Adorno, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Id. at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

-23-

> Generally, the longer a treating source has treated you and the more
> times you have been seen by a treating source, the more weight we will
> give to the source's medical opinion. When the treating source has seen
> you a number of times and long enough to have obtained a longitudinal
> picture of your impairment, we will give the source's opinion more
> weight than we would give it if it were from a non-treating source.

20 C.F.R.  § 416.927(d)(2)(I).

Additionally, the nature and extent of the treatment relationship is considered.

The Regulations state:

> Generally, the more knowledge a treating source has about your
> impairment(s) the more weight we will give to the source's medical
> opinion. We will look at the treatment the source has provided and at the
> kinds and extent of examinations and testing the source has performed
> or ordered from specialists and independent laboratories. For example,
> if your ophthalmologist notices that you have complained of neck pain
> during your eye examinations, we will consider his or her opinion with
> respect to your neck pain, but we will give it  less weight than that of
> another physician who has treated you  for the neck pain. When the
> treating source has reasonable knowledge of your impairment(s), we will
> give the source's opinion more weight than we would give it if it were
> from a non-treating source.

20 C.F.R.  § 416.927(d)(2)(ii).

In the instant matter, the Plaintiff argues that the ALJ disregarded Dr. Mistal's

opinion that the Plaintiff was limited to performing less than a full range of sedentary

work.  (Doc. 5 at 11). However, the Plaintiff does not specify the limitations and

opinions provided by either Dr. Mistal or Dr. Berger should have been included by the

ALJ in this assessment.

As stated above, the ALJ considered Dr. Mistal's opinion in the Plaintiff's RFC assessment. The ALJ noted that Dr. Mistal indicated the Plaintiff was capable of performing sedentary activities but questioned her ability to sustain work.  (TR. 23). However, the ALJ found that physical examination findings consistently showed that the Plaintiff had normal neurological findings and muscle strength in all the extremities.  (TR. 23).  The ALJ stated that Dr. Mistal's clinical notes did not reflect specific findings that would support total disability from a psychological standpoint. (TR. 23; 360-386; 398-406).  Rather, the Plaintiff's medical records routinely described the Plaintiff as not being in apparent acute distress and the ALJ stated that she was not in distress during the hearing.  (TR. 23).  Moreover, it was Dr. Mistal who noted that the Plaintiff was able to lift and carry a maximum of 15 pounds on occasion and ten (10) pounds frequently.  (TR. 394-397).  The ALJ accounted for this limitation and found that the Plaintiff was capable of performing a limited range of sedentary unskilled work on a sustained and consistent basis.  (TR. 21).  See 20 C.F.R. §§ 404.1567(a).

The ALJ also properly evaluated Dr. Berger's opinion with respect to the Plaintiff's psychological limitations.  The ALJ stated that Dr. Berger gave the Plaintiff

a Global Assessment Score of 50 and below.[1]  (TR. 23; 198-210; 339-359).  The ALJ noted that Dr. Berger also found that she had a marked impairment in each category of functioning.  (TR. 199-201).

In evaluating the Plaintiff's  psychological limitations, the ALJ carefully considered the Dr. Berger's opinion as well as other factors, such as the Plaintiff's own testimony.  At step three of the sequential process, the ALJ assessed the severity of the Plaintiff's mental impairments and, similarly to Dr. Berger's assessment, found that the Plaintiff's had some impairments in function. However, the ALJ found that the Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06.  (TR. 20).  The ALJ  stated that he considered the four broad functional areas as set forth in 20 C.F.R. Part 404, subpart P, Appendix 1, which provide that mental impairments must result in at least two of the following: marked

---

[1]  A GAF score, or a Global Assessment Functioning scale, takes into consideration psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  It is not supposed to include the consideration of impairment in functioning due to physical (or environmental) limitations.  A GAF score between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job).  A GAF score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000.  ("DSM-IV-TR").

restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. To meet the listing criteria, a claimant must have marked impairments in at least two of the these areas.

The ALJ found that in activities of daily living, the Plaintiff had mild restrictions, noting that while her sister or boyfriend drive her to medical appointments, she is independent in her other activities. (TR. 20). She attends to her own personal care, bathing, grooming, dressing, and laundry. (TR. 20). She also cares for pets. (TR. 20).

In terms of her social functioning, the ALJ found that the Plaintiff had moderate difficulties. (TR. 20). The ALJ recognized that the Plaintiff testified she had crippling anxiety and a hard time dealing with new people. (TR. 20). But, the ALJ noted that the Plaintiff was able to develop a relationship with her boyfriend, whom she had recently moved in with, at the same time she claimed she was disabled. (TR. 20).

In terms of concentration, persistence or pace, the ALJ found that the Plaintiff had moderate difficulties because she alleges that she lacks motivation and experiences panic attacks. (TR. 20). The ALJ noted that the Plaintiff was able to go grocery shopping, care for pets, watch television and movies and that the Social Security Field Office interviewer reported no problems with her comprehension or

coherency.  (TR. 20; 113-114).  Moreover, the ALJ observed that the Plaintiff was coherent and able to pay attention at the hearing.  (TR. 20-21).

The ALJ recognized that the Plaintiff had experienced one to two episodes of decompensation which were of extended duration. The Plaintiff was hospitalized after she overdosed on her medications in July of 2007 following the breakup with her boyfriend.  (TR. 21). However, the ALJ found that the record did not show repeated episodes of decompensation, each of extended duration, and stated "nor does it show a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate; nor does it show a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement; nor does it show a complete inability on the part of the claimant to function independently outside her home." (TR. 21).

The ALJ noted that record did not reflect aggressive treatment of the Plaintiff's mental impairments and that she had not undergone multiple inpatient psychiatric admissions or frequent emergency room visits as a result of mental symptoms.  (TR. 21).

The ALJ also assessed the Plaintiff's mental impairments at steps 4 and 5 of the

sequential evaluation process.  The ALJ accounted for the Dr. Berger's opinion about the Plaintiff's mental limitations in the RFC assessment, and limited the Plaintiff to positions which did not require dealing with the public or working in crowds of strangers. (TR. 21).

Finally, the ALJ noted in weighing Dr. Berger's opinion, that while Dr. Berger found that the Plaintiff was extremely impaired at all categories of functioning, the Plaintiff was also in receipt of unemployment compensation benefits during the relevant time period., and certified that she was ready, willing and able to work.  This fact, discussed below, greatly reduces the Plaintiff's credibility and justifiably affects the way in which the ALJ weighed Dr. Berger's opinion.

Thus, we find that the ALJ properly evaluated the opinions of the Plaintiff's treating physicians and substantial evidence supports the ALJ's opinion.

**3.      The ALJ Appropriately Considered that the Plaintiff
Received Unemployment Compensation Benefits During      the
Relevant Time Period.**

The ALJ also noted that while the Plaintiff was being treated by Dr. Berger, she was also collecting unemployment benefits until the second quarter of 2008. (TR. 23). To qualify for unemployment benefits, the Plaintiff was required to certify that she was ready, willing, and able to work and was currently looking for work. (TR. 23). The ALJ stated, "The [Plaintiff] cannot be ready, willing, and able to work for

-29-

purposes of the State, but disabled and unable to work for purposes of the Social

Security Administration. She cannot have it both ways."

The Plaintiff argues that the ALJ erred in finding that her receipt of

unemployment benefits disqualified her from social security benefits. (Doc. 5 at 14).

The Plaintiff states,

> While an individual needs to certify that they are ready, willing and able
> to work for unemployment purposes, they do not need to certify that
> they are ready, willing and able to work for full time, unrestricted duty.
> Rather, [an] individual can certify their ability to perform potentially
> very limited, part time restricted work with respect to both physical and
> mental disabilities and still qualify for unemployment benefits.

(Doc. 5 at 14).

This argument is unpersuasive as the ALJ's finding that the Plaintiff was not

disabled did not require that the Plaintiff be able to perform a full range of work on

a full time, unrestricted basis.  Rather, the ALJ limited the Plaintiff to a limited range

of sedentary work.  The Plaintiff cannot argue both  that she was ready, able and

willing to work for the purposes of unemployment compensation benefits while also

claiming that she is totally disabled and unable to work for the purposes of Social

Security disability benefits.  Furthermore, the ALJ is entitled to consider the fact that

a claimant received unemployment benefits during a period of alleged disability. See

Myers v. Barnhart, 57 F. App'x 990, 997 (3d Cir. 2003)(citing Johnson v. Chater, 108

F.3d 178, 180 (8th Cir. 1997)(stating that it was appropriate for the ALJ to consider that the Plaintiff's receipt of unemployment benefits was inconsistent with a claim of disability during the same period). See also Jordan v. Astrue, 2009 WL 2957777 (W.D. Pa. 2009)(stating "it is entirely proper for the ALJ to consider the Plaintiff's receipt of unemployment benefits ..."). We also note that the Plaintiff's receipt of unemployment compensation benefits was only one of many factors the ALJ considered in determining that the Plaintiff was not disabled and substantial evidence supports this opinion.

### 4. The ALJ Properly Evaluated the Plaintiff's Residual Functional Capacity.

The Plaintiff argues that the ALJ's assessment of the Plaintiff's residual functional capacity ("RFC") was not consistent with the medical evidence of record. Residual functional capacity is defined as follows:

Your residual functional capacity:

(a) General.  Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations.

20 C.F.R. § 404.1545(a).

The Court must review the ALJ's decision regarding the Plaintiff's residual functional capacity with the deference required of the substantial evidence standard

of review.  See Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).  As the Burns

Court stated, "the ALJ nonetheless must have evaluated all relevant evidence,

Fargnoli v. Massanari, 247 F.3d 34, 40-41 (3d Cir. 2001), and explained his reasons

for rejecting any such evidence.  Burnett v. Commissioner of Soc. Sec. Admin., 220

F.3d 112, 122 (3d Cir. 2000).  He also must have given Burns' [Plaintiff's] subjective

complaints 'serious consideration,' Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.

1993), and made specific findings of fact, including credibility, as to Burns'

[Plaintiff's] residual functional capacity.  Burnett, 220 F.3d at 120; see also Cotter v.

Harris, 642 F.2d 700, 704 (3d Cir. 1981)."  Id.

Here, in determining the Plaintiff's residual functional capacity, the ALJ

considered all of the Plaintiff's symptoms and the extent to which these symptoms

could be accepted as consistent with the objective medical evidence and other

evidence as noted above.  The ALJ stated that while the Plaintiff has a number of

severe medical problems including scoliosis, anxiety, and depression, these

impairments are not severe enough to render the Plaintiff completely disabled.  The

law is clear that the existence of a medical condition alone does not demonstrate a

disability for purposes of the Act.  See Petition of Sullivan, 904 F. 2d 826, 845 (3d

Cir. 1990).  Therefore, the issue is not only whether the Plaintiff's physical and

mental impairments exist, but whether they result in a functional disability that

prevents the Plaintiff from performing substantial gainful activity.  Thus, the ALJ

found that though the Plaintiff had the severe impairments of scoliosis, anxiety, and

depression, she was capable of performing a limited range of sedentary unskilled

work on a sustained and consistent basis.  Sedentary work is defined as follows:

> (a) Sedentary work.  Sedentary work involves lifting no more than 10
> pounds at a time and occasionally lifting or carrying articles like docket
> files, ledgers, and small tools.  Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking and standing is
> often necessary in carrying out job duties.  Jobs are sedentary if walking
> and standing are required occasionally and other sedentary criteria are
> met.

20 C.F.R. § 404.1567(a).

This conclusion was supported by substantial evidence. The ALJ considered

all objective medical evidence and opinion evidence and there is substantial evidence

to support his determination, including the Plaintiff's own testimony concerning her

limitations. This required the ALJ to evaluate the credibility of the Plaintiff. "[A]n

ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing

a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127

F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs.,

933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the

individual optimally positioned to observe and assess witness credibility.')." Frazier

v. Apfel, 2000 WL 288246 (E.D. Pa. March 7, 2000).  "The ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for

his finding."  Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).  An

ALJ may find testimony to be not credible, but he must "give great weight to a

claimant's subjective testimony of the inability to perform even light or sedentary

work when this testimony is supported by competent medical evidence."  Id.

The Social Security Regulations provide a framework under which a claimant's

subjective complaints are to be considered.  20 C.F.R. § 404.1529.  First, symptoms,

such as pain, shortness of breath, fatigue, et cetera, will only be considered to affect

a claimant's ability to perform work activities if such symptoms result from an

underlying physical or mental impairment that has been demonstrated to exist by

medical signs or laboratory findings.  20 C.F.R. § 404.1529(b).  Once a medically

determinable impairment which results in such symptoms is found to exist, the

Commissioner must evaluate the intensity and persistence of such symptoms to

determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b).

In so doing, the medical evidence of record is considered along with the claimant's

statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the

following instructions in evaluating the credibility of the claimant's statements

regarding her symptoms:  "In general, the extent to which an individual's statements

about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p.

SSR 96-4p provides that "Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms alleged has been established on the basis of medical signs and laboratory findings, allegations about the intensity and persistence of the symptoms must be considered with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)."  SSR 96-4p.

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause these alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.

The ALJ noted that the Plaintiff testified that she had debilitating, severe anxiety, and depression, head and neck problems, spasms, racing thoughts and thoughts of suicide. (TR. 22).   The ALJ reasoned that the Plaintiff had spinal problems for a "long time and was able to work with it in the past." (TR. 22).   The ALJ stated that the Plaintiff said she could not walk for prolonged periods, that her sleep is disturbed by her anxiety and depression, that she lacks motivation, that she has social anxiety, that she has a hard time dealing with new people, that she has anxiety attacks and that she is in constant pain.  (TR. 22).   The ALJ accounted for all of these impairments by limiting the Plaintiff to a restricted range of sedentary work as follows:

> She can lift and carry 10 pounds occasionally and 2-3 pounds frequently. She can sit for 30 minutes at a time. She needs to change positions from seated to standing every 30 minutes. She can stand and/or walk for up to 15 minutes at a time, but no more than 2-3 hours cumulatively in an 8-hour workday. She cannot do jobs which require dealing with the public or working in crowds of strangers. She can understand, remember and carry out simple instructions and make simple work-related decisions. She can respond appropriately to supervision, co-workers, and usual work situations. She can handle changes in a routine work setting appropriately.

(TR. 21).

The Plaintiff again argues that the ALJ discounted the opinions of Dr. Mistal and Dr. Berger in evaluating the Plaintiff's RFC.  (Doc. 5 at 12).  However, as

discussed above, the ALJ considered that Dr. Mistal opined that the Plaintiff was capable of performing sedentary activities but her ability to sustain work was questionable. (TR. 23; 391-397). The ALJ stated that the Plaintiff's physical examination findings have consistently shown normal neurological findings and muscle strength in all her extremities, and that the Plaintiff was repeatedly described as not being in acute distress. (TR. 23; 140-144).

The ALJ considered the opinion of the state agency reviewing physician, Dr. Wander. Dr. Wander opined that the Plaintiff could perform medium work but the ALJ stated that he believed medium work was too much after careful consideration of the entire record. (TR. 22-23; 271-276). The ALJ further stated that the Plaintiff has been undergoing counseling at Lighthouse with Jacqueline Costello, LPC and found that "her assessment of poor to no ability to work to also be overstated and reject it." (TR. 23; 387-390). Thus, he limited the Plaintiff to a limited range of sedentary work.

We agree with the ALJ that the Plaintiff's RFC as determined is fully supported when considering the Plaintiff's testimony and written statements in connection with the clinical facts, medical findings and opinions of treating, examining and non-examining physicians. (TR. 20).

In light of the above discussion, we find that substantial evidence supports the ALJ's opinion that the Plaintiff is not disabled because she is capable of performing a limited range of sedentary work and that significant jobs exist in the economy that the Plaintiff is capable of performing.

## III.   Recommendation

For the following reasons, **IT IS RECOMMENDED THAT** the Plaintiff's appeal from the decision of the Commissioner of Social Security denying her claim for SSI benefits, (Doc. 1), be **DENIED**.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

 *S/Martin C./ Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: July 1, 2011